1

2

3

4

5

6

7

8                                    **UNITED STATES DISTRICT COURT**

9                                    **EASTERN DISTRICT OF CALIFORNIA**

10

11     DALE L. COTTRELL,                         )    Case No.: 1:13-cv-01530-LJO-SAB (PC)
                                                 )
12                           Plaintiff,          )    ORDER DISMISSING COMPLAINT, WITH
                                                 )    LEAVE TO AMEND, FOR FAILURE TO STATE
13                    v.                          )    A COGNIZABLE CLAIM
                                                 )
14     FELIX IGBINOSA, et al.,                   )    [ECF No. 1]
                                                 )
15                           Defendants.         )
                                                 )
16     _____          )

17            Plaintiff Dale L. Cottrell is appearing pro se and in forma pauperis in this civil rights action

18     pursuant to 42 U.S.C. § 1983.

19            Plaintiff filed the instant complaint on September 23, 2013.

20                                                    **I.**

21                                    **SCREENING REQUIREMENT**

22            The Court is required to screen complaints brought by prisoners seeking relief against a

23     governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24     Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25     "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

26     monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

27            A complaint must contain "a short and plain statement of the claim showing that the pleader is

28     entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

                                                     1

1  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

2  do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly,

3  550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally

4  participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County,

5  Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

6       Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings

7  liberally construed and to have any doubt resolved in their favor, but the pleading standard is now

8  higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive

9  screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow

10 the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal,

11 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer

12 possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely

13 consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556

14 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

17       On September 25, 2010, at approximately 0800 hours, while Plaintiff was locked inside his

18 prison cell, he had a heart attack that resulted in coronary artery stenting that was performed in the

19 afternoon of September 25, 2010.

20       This heart attack was preceded by symptoms of cardiac risk factors shown by abnormal cardiac

21 events that occurred between March 2010 and September 2010. In addition, during the months

22 preceding the heart attack, Plaintiff's doctors noted Plaintiff's family history of heart attacks and

23 results of blood testing revealed high cardiac risk in his medical charts. Despite these facts, Plaintiff

24 was not given cardiac risk treatment between March 17, 2010 and September 2010.

25       Plaintiff specifically contends that on March 17, 2010, a correctional officer found Plaintiff in

26 his cell with pale skin color, sweating, and complaining of dizziness and chest pain. Angula, a

27 Registered Nurse (RN) arrived and transported Plaintiff in a wheel chair to the "B" facility clinic. At

28 the clinic, Defendant Ifeoma Ogbuehi, Family Nurse Practitioner (FNP), evaluated Plaintiff's medical

2

condition and charted the following notes: "Sudden chest pain & lightheadedness; pain did not radiate to arm or neck/jaw; no palpitation Sx's resolved in less th[a]n 30 minutes; side chest pain x 30-45 minutes; previous episodes at pain scale of 10; chest pain her Hx – noncardiac chest pain EKG; advised to return to clinic Sx resumes."

On May 19, 2010, Plaintiff contends that Defendant Ifeoma Ogbuehi, (FNP) reviewed Plaintiff's medical chart, including a report that Plaintiff has a family history of heart attacks and a report written by RAJIB DAS P.A., who reported, in part, that on March 26, 2010, he detected that Plaintiff had developed a heart "murmur" and Plaintiff's April 2010 lab reports showed abnormal results with a notation showing that Plaintiff was "high risk for heart disease."

On July 21, 2010, Plaintiff contends Miran Park, M.D., reviewed his medical chart, including a report that Plaintiff has a family history of heart attacks and a report written by Ifeoma Ogbuehi dated March 17, 2010, which described some of Plaintiff's symptoms.  Defendant Miran Park did not arrange for any cardiac medical treatment to be provided to Plaintiff.

On August 21, 2010, Plaintiff contends Angelica Duenas, M.D., reviewed Plaintiff's medical chart regarding his history of heart attacks and report written by Ifeoma Ogbuehi.  Defendants Angelica Dueanas did not arrange for any cardiac medical treatment to be provided to Plaintiff.

On May 26, 2009, Pleasant Valley State Prison (PVSP) health care providers, under the responsibility of Chief Medical Officer, Felix Igbinosa, cancelled continuation of Plaintiff's cardiac risk intervention medical therapy, and such therapy was not resumed until after Plaintiff had a heart attack on September 25, 2010.

 Plaintiff contends that C. Lackey, Registered Nurse (RN), was present in BFB4, when another inmate explained to Lackey that Plaintiff was in prompt need of medical attention.  C. Lackey responded and asked Plaintiff if there was a problem.  Plaintiff told him he felt he was having a heart attack.  C. Lackey replied, "What makes you think you're having a heart attack?"   Plaintiff told Lackey he had sharp chest pains and a burning sensation, was nauseas, and something was wrong with his arm.  Lackey told Plaintiff he would return after distributing medications in the building.  Plaintiff then told Johnny that he was not feeling well, so Johnny shouted "Man Down," repeatedly.  Officer D. Monroy responded to the problem.  Plaintiff repeated his symptoms to Monroy and he commanded

activation of the emergency alarm.  Several correctional officers responded.  Plaintiff was placed on a stokes litter and carried out of the building dayroom and placed on the floor.

The building medical response team arrived and C. Cardens, RN, began taking Plaintiff's blood pressure and asked the symptoms.  Plaintiff repeated the symptoms as he described to Lackey and Monroy, and added that he was dizzy, was blacking out, and was sweating but cold.  An ambulance arrived and Karen Berard, RN, took charge.  Plaintiff repeated his symptoms to Berard, who began questioning bystanders about the truthfulness of the symptoms Plaintiff was describing.

Berard asked Monroy if Plaintiff was conscious when he responded to the man down call, and Monroy stated that Plaintiff was speaking.  Berard then told Plaintiff, "I don't believe your story about blacking out, I just talked to Monroy and he said you were talking to him at your cell."  Plaintiff urged Berard to believe he was experiencing the symptoms he described.  However, Berard stated, "I still don't believe you, do you know how many inmates we take to the hospital with chest pains only to learn they have heart burn? I can tell just from looking at your skin color you're not having a heart attack, how long ago did you eat breakfast?"

D. Monroy checked Plaintiff's limbs as if he was looking for needle tracks.  Plaintiff then told Berard that he was not a drug user.  Berard told Plaintiff to sit up and she instructed him to drink a cup of anti-acid medication, and gave him one Benadryl, one Baclofen, and one Neurontin, and told Plaintiff they would check on him in forty-five minutes.

Berard then cancelled the emergency response and the medical team left the scene leaving Plaintiff unattended by any medical staff.  Plaintiff urged D. Monroy to allow him to go to the clinic. Monroy told Plaintiff, "it's their call, it's not my call, medical staff said you're ok, I have had heart burn before and it feels like a heart attack."  Monroy later allowed Plaintiff to go to the yard toward the clinic.  Correctional officer J. Doe took Plaintiff to the "B" facility clinic in a golf cart.  C. Cardens, RN, gave Plaintiff an EKG and called an ambulance.  Plaintiff was transported to a medical facility.  Upon his arrival, Berard stated, "you again."  She then began preparing an EKG, during which she stated, "I still don't believe you were blacking out."  After the EKG, Plaintiff was taken to Fresno Community Regional Medical Center and diagnosed with a myocardial infarction and heart stenting was performed.

4

Monroy pounded his fist on the table and stated, "this is not going down," (responding to plaintiff's reminder of the occurrences described above). Monroy refused all requested information but recited an inaccurate account alleged to be a notice of unusual occurrence. Plaintiff did not name Monroy as a defendant because he perceived his actions as reprisal.

Plaintiff contends that Igbinosa had actual and/or constructive knowledge that PVSP health care providers failed to provide adequate medical care for Plaintiff's cardiac risk condition between the dates of May 26, 2009 and September 25, 2010.

**III.**

**DISCUSSION**

**A.    Deliberate Indifference to Serious Medical Need**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1977); Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012); Wilhelm v. Rotman, 680 F.3d at1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th

5

Cir. 1989)); <u>Wilhelm v. Rotman</u>, 680 F.3d at 1122-23 (citing <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  <u>Snow</u>, 681 F.3d at 988 (citing <u>Jackson</u>, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff's allegations fail to give rise to claim of deliberate indifference by any of the named defendants.  At most, Plaintiff's allegations may support a claim of negligence.  However, even assuming Defendant erred, a finding which is not supported by the record, an Eighth Amendment claim may not be premised on even gross negligence by a physician.  <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).  While Plaintiff may have ultimately suffered a heart attack, Plaintiff's allegations fail rise to level of deliberate indifference to his medical needs.  Moreover, although Plaintiff may disagree with the medical assessments of his health conditions leading up to his heart attack, Plaintiff fails to demonstrate that any of the defendants knew of and disregarded an excessive risk to his health.  Accordingly, Plaintiff fails to state a cognizable claim for relief, and the Court will grant Plaintiff the opportunity to file an amended complaint, if he wishes to do so.

**B.      Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation.  <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

To the extent Plaintiff is attempting to allege a claim of retaliation, Plaintiff does not allege facts that plausibly support the conclusion that any action taken against him was "because of" Plaintiff's protected conduct.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

**C.      Supervisory Liability**

Plaintiff names Chief Medical Officer (CMO) Felix Igbinosa as a Defendant in this action.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct.  Iqbal, at 1948-49.  A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against CMO Igbinosa.  The only basis for such a claim would be respondeat superior, which is precluded under section 1983.  Accordingly, Plaintiff fails to state a cognizable claim against Igbinosa.

**IV.**

**CONCLUSION AND ORDER**

For the reasons stated, Plaintiff's complaint fails to state a claim upon which relief may be granted.  Plaintiff is granted leave to file an amended complaint within thirty (30) days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  Although accepted

///

7

as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

IT IS HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.    Plaintiff's complaint, filed September 23, 2013, is dismissed for failure to state a claim;

3.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4.    If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **March 24, 2014**

UNITED STATES MAGISTRATE JUDGE

8